Good morning, Your Honors. Andrew Struve for Appellant and Defendant Vision Service Plan. I would respectfully request three minutes reserved for rebuttal and I'll try to keep an eye on the time. So, Your Honors, we are here on an interlocutory appeal of a grant of a preliminary injunction in a two-hour max telethonic internal fear hearing before three independent optometrists to discuss with Dr. Fox the company's conclusion that she had submitted false claims. Independent but selected by your client. That is true from a panel of optometrists who are willing to do it. But yes, Your Honor, yes, Judge Hawkins, selected by our client. And from the construct of this one-to-two-hour hearing that was requested to be done telephonically and was granted to be done telephonically, the district court concluded that participating in that one-to-two-hour hearing posed a risk of irreparable harm to Dr. Fox. And in reaching that conclusion, the district court did not touch on, mention, cite, nor obviously therefore attempt to distinguish this court's longstanding 1990 decision in the camping construction case, which sets forth the standard for when a trial court may appropriately enjoin, in that case, a collective bargaining agreement arbitration, which is a much more involved procedure than here. And in camping construction, in what I was rather impressed, probably the tightest two paragraphs ever written explaining for the decision, the court said, well, look, you have a relatively minor time and expense commitment to participate in this arbitration, and you might win. And if you did, we wouldn't need to be here. And if you didn't win, the arbitration award is not self-executing. It needs to be taken in and confirmed. Yeah, but this is all a distraction. The real question is whether or not it's an unconscionable contract that you entered into with Dr. Fox. I will be more than happy to discuss unconscionability. And we have a number of points about the district court's conclusion in that regard. Would you like me to turn to those for the moment? From my standpoint, yes. My colleagues may wish to pursue it. No, I agree. I have the same concerns. Perfect. So on the unconscionability aspect of this, starting with procedural unconscionability and as we're told to do, beginning with the question of oppression, the court made a fundamental misreading of the record on that very preliminary point. The court said, and I quote, VSP provides no evidence of any other doctors who have negotiated with VSP concerning the terms of the NDA or the FHP or whether VSP has ever accepted any proposed changes to same. And that actually is 180 degrees wrong from the record. And I would offer Your Honor's record at page 227, and this is the only evidence on this point in the record, the declaration of a VSP in-house attorney, Nicole Wasilcu, who's with us today, who testified that in agreement, and VSP always entertained them and sometimes accepted them. Did they ever entertain or accept one with respect to the clauses at issue in this case? Not to my knowledge, but I also have no idea. Well, then the district court might have had it pretty close to right. Well, the district court might have had it pretty close to right if there was evidence that they considered it and not accepted it. But the whole point here also from an intellectual standpoint, Judge Fletcher, is we have Dr. Fox testifying that she never even read the agreement. So there was nothing to decide whether or not to negotiate. With respect to what she signed, was the agreement in front of her or did she ask to ask for it separately? The network doctor agreement she signed and the network doctor agreement points out right before the signature, A, the existence of a fair hearing procedure, and it gives about 20 lines of text describing it and then references. Still waiting for an answer to my colleague's question. Which one? Was the contract in front of her? Yes. In writing in front of her? Yes. Including the multi-page description of the FHP and the arbitration provision? No. Why not? That was my question. Well, I wanted to answer. I thought that was your question and I was getting there. The contract that she signed described both things, arbitration and the fair hearing procedure with a big bold heading above it titled Fair Hearing Procedure slash Binding Arbitration. You're talking about paragraph 11 on page BSP 352? I believe that's the case. We'll confirm it. 352. And so the FHP, the Fair Hearing Procedure itself is a lengthy document. It was not attached. It was incorporated by reference. And the trial court placed great weight on that because apparently the trial court found surprise because the document that described in detail all the rules of the hearing was not attached to the master document that she never bothered to read to begin with. Well, I have to tell you, I mean, when you stood up and said that this thing would only take one or two hours, after reading 20 pages in the VSP, I guess it's the Fair Hearing Procedures, my copy starts at 116. I'm not sure whether that's an ER number or a document production number. It looked to me like it would take a whole lot longer than one to two hours. Apparently it doesn't. I don't know. I don't participate in these things. This is designed to be an informal process. If you say I don't know, why did you tell us how long it was going to take? Oh, I don't know why it's possible to accomplish it in that amount of time. But apparently that historically is what transpires. And you say apparently. What's your evidence for your statement that apparently that's true? I believe it's in Ms. Wasilkiw's declaration. But Mr. Steinberg and I have a very good relationship and I don't think he would deny that that's the case. So again, the rules were not attached to the contract itself. But this circuit's own decision in the Publon case, and this follows the Porcorny case and its predecessors, it says that the incorporation of rules is limited, that requirement as to substantive unconscionability is limited to the context of employment contracts. And this is not an employment contract. And so, you know, the rules, there was a reference in the network doctor agreement saying that Dr. Fox, if she had any questions, could go ahead and request clarification. But again, they weren't attached, but it was never read. And then turning to substantive unconscionability for a moment, and really having done a lot of unconscionability cases, you know, at risk of pointing out the obvious, but for the benefit of the record, it's a balance, right? So a great degree of procedural unconscionability can have an effect and can make something unconscionable with a very small degree of so on. Well, there's not a lot of substantive unconscionability here, frankly. We have a confidentiality agreement, and that's the first thing that the court spoke to. And the court, in its order, turned to the confidentiality provision, and we said, well, in this circuit's recent decision in the Publon matter, and in the Sanchez case, which is a state court case, the court said, well, there's no procedural, there's no substantive unconscionability caused by the existence of the confidentiality agreement. And how the district court distinguished those binding decisions was to say, yeah, but in those cases, the confidentiality provision said, unless otherwise agreed. Well, okay. Every contract says in it, unless otherwise agreed. It's implied. It's a novation. Tell me if I'm correct about this. The agreement provided that VSPP alone could initiate the fair hearing process? That's correct, isn't it? No, Your Honor. No, Your Honor. The fair hearing process must be initiated by the doctor. If the doctor does not dispute the findings, we don't go to a fair hearing. And in this case Okay. So I'm mistaken about that. Not at all, Your Honor. Yes. The three members of the panel are effectively selected by VSP? Yes, Your Honor. Okay. The hearing venue is in Sacramento, where VSP is headquartered? Or by telephone, or wherever otherwise negotiated. FOX is required to appear, but VSP is not? I, well, I don't know how to answer that. I can't imagine how one requests a hearing and then no shows for it. But VSP is required to be there. VSP always is. And the document says that? I would have to check that. I can't answer off the top of my head, Your Honor. FOX is limited in her ability to be assisted by counsel? As is the case in almost every peer-reviewed hearing. The answer to that one is yes? Correct. Okay. Go ahead. But again, if Dr. FOX doesn't like the result of any of that, the decision is not self-executing. It can be arbitrated. And she's got counsel and anything else she wants there, and the full protection of the rules of the arbitral venue. This is not a profit-making venture. But as I understand it, she says the clause that then sends her to arbitration, that's part of what she contends is unconscionable. Well... When you're trying to avoid arbitration, she says, I want to go to court. I don't want to go through your, quote, fair hearing process, and I don't want to go through the arbitration. That's... And she says, I don't have to. That's absolutely right, Your Honor. But... So for you to say as a consolation prize, she gets to go to arbitration, that's exactly what she doesn't want to do. The reason she doesn't want to do it, Your Honor, pragmatically, arbitration is a terrific avenue for people to save money and time in all kinds of contexts. The reason she doesn't want to do it is in the record, and it's right in her complaint. And her theory is this. Your procedure doesn't match the reg. Because your procedure doesn't match the reg, it can't be employed. And because it can't be employed, you can never attempt to collect from me the $450,000 I billed. Am I correct that the... That's the construct. ...that the district court held that your client had waived arbitration? No, Your Honor. We could not have waived arbitration. No, Your Honor. Okay. So it's still an issue. It's still live. Oh, absolutely. And in fact, they initiated the process. They requested it. They requested the hearing. A hearing was scheduled. They continued it from June to October to November to February, and then sought an injunction to prevent this awful act from occurring. I see my time is up. Thank you. Good morning, Your Honor. If it may please the Court, Dr. Craig Steinberg. I'm appearing for Dr. Patricia Fox. And I don't want to belabor points. I think Your Honor's focused in very clearly on the conscionability issue. I think you understand it. I think you got it right, as I sense from the questions. I want it clear, though, that what Dr. Fox is asking for here is simply what California says, a fair, fast, cost-effective process. VSP has, since the district court's decision, has actually modified their process. And now they offer the one that's in front of the court as an alternative to the doctor can mail in. Basically, they're following the process that Section 1300.71.38 lays out that's supposed to be followed. You mail it in. If you're not happy with the outcome, you can then proceed on an administrative writ into the courts and test the adequacy of that decision. So there is no more telephone testimony or hearing as counsel represented? In the fair hearing process, the doctor has a choice to either appear in person or to appear telephonically. Now, when I represent the doctor, I always appear in person. On occasion, because of the significant inconvenience and cost, Dr. Fox is in Boston. They will appear telephonically. Most of my clients appear in person. So you go to Sacramento for the hearing? That's correct, because I'm in Los Angeles. So it's relatively easy. I go to Sacramento, and that way I can interact with the fair hearing panel. Does the hearing typically take one to two hours? I realize that's a significant amount of your time and your client's time to go to Sacramento to physically attend. The hearings are typically scheduled for one hour. Approximately 20 to 30 minutes is spent with the VSP auditor making their presentation of the case. Then the doctor has approximately that amount of time to rebut or present their case. And then at the end, there's an opportunity for counsel for each side, which, as in all of my cases the last eight or ten years has involved myself and Nicole there, we have five minutes each to make closing arguments. So it is absolutely true, the fair hearing process, the actual hearing is about an hour. Not that my clients wouldn't often like more time, but what's done in order to fit it into an hour is VSP does their audit of typically 40 records. For the fair hearing, they present what I call the sample of the sample. They present five or six representative cases from the audit to the hearing panel, and then my client has the remainder of time to rebut those five or six cases or present other cases from the 40 that were audited. But the issue here was pretty straightforward, was it not? And that is that the billing doctor from Dr. Fox's clinic, or I don't know if it was a doctor, maybe it was a technician, was not authorized by the VSP network to essentially be conducting services to bill VSP for the service. I think you can characterize the issue that way. I would characterize it slightly different. It's really what's the extent of what a technician can do versus a doctor. But I mean, it's a common, it's a bit like the class action argument that we just heard argued. It's a common issue as to all of the $450,000 worth of claims that Dr. Fox's clinic submits. Absolutely. It appears to be in this case. Why would you need, I mean, why would you need a huge sample if 10 is a representative sample of 400 claims, what difference does it make? Right. In this particular case, Your Honor, it probably is a fair approach. It's probably a reasonable approach. I'm not saying it's not. Every case is different. But Dr. Fox's concern is simply that it's not a fair process, and it's also not the statutorily approved process in California. California law applies here. She's saying, you know, let's follow the law. She would like an avenue that gives an opportunity for a court to review whatever the findings are of the fair hearing panel if it goes against her. But, you know, certainly... What if there were no fair hearing process? What if there was simply an internal file review, a final determination made by the insurer, and then arbitration? Would that be okay, in your view, under California law? Not the arbitration part. So California has essentially said none of these claims between providers and health insurance carriers can be arbitrated? That's what Section 1300.71.38 expressly says. And why wouldn't that be preempted by federal law? Well, that's the whole other issue in the case, and that's the McCarran-Ferguson Act issue. Right. Yeah, that's the carve out. Right. And whether or not that particular provision regulates the business of insurance. The court didn't ask any questions of Mr. Struve on that issue. It's an interesting issue, but, you know, I'm more than happy to talk about it. I think the issue there is protecting under FABE, the U.S. v. FABE case, what's in the interest of the policyholder. And I would suggest in today's PPO and managed care world, there is a significant interest to the policyholder that the doctors are fairly treated by the insurance companies. I think all of us would experience having to find a new doctor if our insurance company gave our doctors a hard time and they didn't get paid. The scope of the McCarran-Ferguson carve out for state regulation of insurance is exceedingly broad. So not limited to arbitration. Yes. It's not the specific statute or regulation at issue says you can't arbitrate. And I can only surmise because the underlying health and safety code says a fair, fast, cost-effective process. Then the regulation says that can't be arbitration. So since I don't think we'd really dispute arbitration being fair or fast compared to court, I'm thinking it's got to be because the legislature felt that that's not really a cost-effective process for resolving provider disputes of this sort. They have a more streamlined process. One that VSP has now adopted as an option for doctors where the doctor submits in writing their response to the claims that were denied. The administrative or the health plan addresses those. They look at it. They issue a written decision within, I believe, 45 days. And at that point, then the doctor has the normal opportunities to challenge that through a writ proceeding in the spirit court. And that's what Dr. Fox is asking for. So in terms of sort of forward-looking importance of this case, it sounds like there's not much. I mean, it's important, obviously, to Dr. Fox in this case, but it sounds as though VSP is now doing exactly what Dr. Fox wants to be done in her case. Is that right? They're offering it as an alternative. Now, I have not examined, I just learned this from some new clients. So I've not looked at the process. But whether it really complies is not in front of us. Correct. Okay. So, Your Honors, if you have any other questions, again, I think we briefed the issues reasonably well. I do, let me address camping construction briefly on that irreparable harm issue, though, because that's, I think, an important thing for this Court to look at, which is does camping construction apply in a case of this nature where you've got a significant imbalance in the parties? In camping construction, you had a construction company, a labor union, collective bargaining. The cost of arbitration there is relatively slight in the big scheme of things. Here you have an insurance company that insures 80 million people in the United States for vision care against an individual doctor. There's a great imbalance. I don't know that it's of arbitration is slight in the case of an individual. She could easily, in the arbitration process, easily spend half of a year's earnings. And there's a rule that severely limits what she can recover even if she prevails. One of the rules would limit her recovery to $15,000. That's right. Or nothing, depending on the required settlement proposal. And it requires an offer in compromise, et cetera, et cetera. Mandatory. She must make an offer. And if it's not a good enough offer, then she risks losing all the attorney's fees, even if she prevails. There's a rule in negotiation. He who makes the first offer loses. Maybe that's why that's so required, part of the fair hearing process. So, Your Honor, I have nothing more to add unless Your Honor's had a question. Before you sit down, would your client be willing to mediate this dispute? My experience has been my clients are always willing to mediate. I've not asked her that question. But I've not had a client who refused to mediate a case. This seems to me off the top of my head. If they're now offering a procedure which is the new improved procedure, which might be acceptable to your client, and that this is not a case that's going to define the rest of the world in these provider issues, it might be worthwhile to consider. Possibly. I can't . . . I won't speak for my client right at this moment. Dr. Steinberg, we do have court mediators that are standing by to assist parties if both sides are willing to sit down with them to try and resolve it. Since the procedure seems to have changed, that might be a great way to resolve this case without VSP running the risk of a decision that they're not going to like, or maybe providers getting a decision that they don't like on a procedure that no longer is in existence. And I will certainly be more than happy to discuss it with Mr. Struve. I'm always open to resolving cases. I don't have anything else. Thank you, Your Honor. Thank you. Mr. Struve? Thank you, Your Honor. It's just a couple of closing points. Counsel, as I knew he would, very candidly admitted it's a one-to-two-hour process. You are absolutely right on that. I got that one right. Blind dogs and bones. We are not trying . . . the injunction is not directed at the arbitration. It's directed at the fair hearing process itself initially. It's not like the fair hearing occurred and then an injunction was sought. So we have to look at it as an effort to enjoin even this one-to-two-hour proceeding, which she might win. Or, on occasion, these do result in a rapprochement along the lines of a mediation or what you have it. But it takes us right into the heart of camping construction and the irreparable injury issue, which is really the key issue here before we even got to unconscionability. And the one other thing I'd say about the unconscionability, because we talked about settlement offers and the need to discuss facts and those kinds of things, those are all mutual provisions. And the district court missed this one. And I'm sure it was my fault that the district court missed it, but the district court nevertheless missed it. When one is dissatisfied with the result of the fair hearing and they initiate an arbitration, then they are required to engage in a pre-arbitration discussion and offer. That can be either party. It's a mutual provision. It's not a one-sided provision. The judge, Judge Mendez, really did get one thing right, though, which is if you look at the transcript from the hearing, he reflected looking at the irreparable injury issue, which again he called the central issue and we think it is. And he said, you know, Dr. Fox, counsel, you're proceeding entirely from the viewpoint that you're going to lose. This might actually work. You might actually win. And when I hear as counsel about how expensive an arbitration is, well, these proceedings are a darn sight more expensive than a one to two hour hearing or even an arbitration for that matter. And my final point in my last 22 seconds, Your Honor had mentioned the selection of the optometrists by VSP and I just wanted to say it wasn't something that they came up with. It's the same procedure used, for example, by the University of California and its faculty peer review hearings. It's a fairly common standard with a lot of case law behind it. And I thank Your Honors for your time. And if you know one of the great things about mediation is no one wins and no one loses. I am more than happy to recommend it to our client, although having spent all the funds on this issue, I would suspect would like a decision no matter what that might be. Well, what we might do, I'll consult with my colleagues, we may send you an order giving you a month or several weeks to decide whether you wish to mediate. And if you say no, obviously a decision to mediate has to be mutual. If you wish to mediate, fine. If you don't, say no and then we would simply decide the case. I appreciate the court's offering of alternatives always. Thank you very kindly. Thank both of you. Fox vs. VSP submitted for decision. And we'll now take a 10-minute break.
judges: Hawkins, W. Fletcher, Tallman